ENTERED
LOGGED ____ RECEIVED

JUN 17 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO CELLULAR DEVICES IN THE CUSTODY AND CONTROL OF THE DEPARTMENT OF HEALTH & HUMAN SERVICES | Case No. 19-1957-SAG |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Erin Fuchs, being first duly sworn, hereby depose and say the following:

1. I am a duly sworn and appointed Special Agent of the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations (hereinafter "HHS-OIG"). I make the following statements, based upon information obtained by myself, other Special Agents of DHHS-OIG, as well as information conveyed to me by other law enforcement officials and other sources. I have been a Special Agent since December 2006, currently assigned to the Columbia Field Office where I conduct health care fraud investigations. I have directed, assisted and/or participated in the preparation and/or execution of federal search and arrest warrants. This affidavit does not set forth every fact discerned throughout the investigation; rather, it contains a summary of the investigation to date and sets forth only those facts that I believe necessary to establish probable cause to search the items described herein.

2. The facts in this affidavit come from information obtained from other agents and law enforcement officers, witnesses, my knowledge, training and experience, and personal observations. This affidavit is intended to show there is sufficient probably cause for the requested warrant and does not set forth all of my knowledge about this matter.

1

## **Statement of Probable Cause**

3. This affidavit is made in support of an application for a warrant to search two cell phones seized on September 14, 2018 from Clifton Mosley (collectively the "**TARGET DEVICES**") specifically:

    i. One Samsung Phone Model Number SM-G550T1;

    ii. One Apple Iphone Model Number A-1660;

for evidence of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 (hereinafter "**TARGET OFFENSE**").

4. On March 5, 2019, a Grand Jury sitting in the District of Maryland returned a true bill charging Mosley in a Superseding Indictment with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841, for the timeframe beginning on a date unknown to the grand jury but at least as of December 2015, and continuing through in or about December 2016. Mosley was also charged with conspiracy and two substantive counts related to murdering a witness, both retaliation, in violation of 18 U.S.C. §1513(a)(1)(B)), and tampering in violation of 18 U.S.C. § 1512(a)(1)(A), for the murder of Latrina Ashburne on May 27, 2016.

5. On March 6, 2018, law enforcement officers located Mosley at 3009 Wylie Ave in Baltimore and arrested him on a warrant issued as a result of the Superseding Indictment.

6. I recently learned that the Baltimore Police Department (hereinafter BPD) conducted a search and seizure warrant on September 14, 2018 at the same address (3009 Wylie Ave) that resulted in the arrest of Mosley for possession of over 10g of marijuana and possession of paraphernalia. Honorable Judge Waxman of the District Court of Baltimore City authorized the BPD warrant on September 12, 2018. A copy of the BPD statement of probable cause for Mosley's arrest as sworn to by Det. Jason Dipaola is verbatim as follows (with errors in original):

2

a. At approximately 1220 hours Detective Sanchez and I watched as Clifton Mosley pulled into the 3000 Block of Wylie Ave and parked his 2002 Infinity Q45 Maryland registration 7CW7346. At this time armed with a search and seizure warrant for both Clifton Mosley's vehicle and the address of 3009 Wylie Ave, Baltimore, MD Detective Sanchez, Officer's Smith, Marsh and Sgt. Ramberg pulled in front of Mosley's vehicle and secured him, the vehicle and made entry into 3009 Wylie Ave. The door to the house was open and the people inside could hear officers outside, due to Officer safety officers made entry identifying themselves as Police.

b. Once inside the following people were detained: Wanda Banks who was in the back upstairs bedroom and John Cheeks who was coming down the steps to see what was going on outside. At this time Clifton Mosley was brought inside and all three were read their Miranda Rights by this Detective. All three individuals acknowledged that they understood their rights.

c. Photographs were taken and thorough search was completed with the following results: In the vehicle no evidence was recovered. In the dwelling of 3009 Wylie Ave. the following was recovered and submitted to ECU by this Detective:

   i. In the front left upstairs bedroom (the door was locked and forced open by Officers during the security sweep) in the night stand was PLASTIC CONTAINERS CONT. GREEN PLANT MATERIAL APPROXIMATE WEIGHT 5 GRAMS (SUSPECTED MARIJUANA). In the same room in the closet was a GREEN AMAZON BAG THAT CONTAINED 6 CLEAR PLASTIC BAGS CONT. GREEN PLANT MATERIAL APPROXIMATE WEIGHT OF 175 GRAMS (SUSPECTED MARIJUANA), 4 BLACK PLASTIC BAGS CONT. GREEN PLANT RESIDUE (SUSPECTED MARIJUANA), 4 CLEAR PLASTIC BAGS CONT. GREEN PLANT RESIDUE (SUSPECTED MARIJUANA), MISC. PACKAGING MATERIAL CONSISTING OF EMPTY PILL BOTTLES, SSANDWICH BAGGIES, LARGER CLEAR PLASTIC BAGS AND ADDITIONAL HEAT SEALED BAGS AND 2 DIGITAL SCALES WITH PLANT RESIDUE (SUSPECTED MARIJUANA). Also seized from the room was the door knob. Clifton Mosley had a set of keys on his person. These keys were taken and locked and unlocked the front left bedroom door where all the evidence was seized. Clifton Mosley was searched and found to have $175.00 U.S. Currency on his person and two cell phones a Samsung and an Iphone. In the living room area was 4 PILL BOTTLES CONT. GREEN PLANT MATERIAL APPROXIMATE WEIGHT 5 GRAMS (SUSPECTED MARIJUANA). All evidence was collected and submitted to ECU by this Detective. A copy of the sealing order with an inventory of what was seized was left with John Cheeks.

d. As a member of the Baltimore City Police Department, I have received 40 hours specialized training in street level narcotics enforcement. I have also completed

3

an 8 hour class of drug identification by Multi jurisdictional drug training task force. In my 7 years I have made or participated in over 1500 arrests and seizures of CDS. All events occurred in the City of Baltimore State of Maryland.

7. According to Maryland Judiciary Case Search, Mosley plead guilty to possession of 10 grams or more of marijuana on November 26, 2018 and sentenced to six months' probation.

8. I obtained the cell phones from BPD on May 15, 2019.

9. Based on training and experience, including in reference to the federal prosecution of Mosley for drug trafficking, I know that cellular telephones may contain evidence of drug trafficking. Specifically, I know that Mosley has used other cell phones related to the charges in the Superseding Indictment for drug trafficking. Further, based on my knowledge, training, experience, and participation in other investigations, I know that suspects engaging in street drug activity commonly use cellular telephones and social media applications to communicate and in furtherance of their activities. Often these cellular telephones and social media applications contain phone numbers, contact information, electronic communications, scans, photos and other relevant files, including travel information and financial data. Accessing this information is critical as law enforcement works to identify the full scope of the criminal conduct and identify possible co-conspirators.

10. BPD seized the **TARGET DEVICES** as evidence in its drug case against Mosley but, to my knowledge, the **TARGET DEVICES** were not searched. Based on the foregoing, I respectfully submit that there is probable cause to issue a search warrant for the **TARGET DEVICES** as further described in Attachment A for the information detailed in Attachment B.

## CONCLUSION

11. Based on the facts set forth above, I submit that there is probable cause to believe that evidence, fruits, and instrumentalities of the violations of the **TARGET OFFENSE** are

presently on the **TARGET DEVICES** further described in Attachment A, which are to be searched for the items listed in Attachment B.

12. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Special Agent Erin Fuchs
United States Department of Health and Human Services

Subscribed and sworn before me this ____ day of June, 2019

_____
Honorable Stephanie A. Gallagher
United States Magistrate Judge

5



## ATTACHMENT A – TARGET DEVICES

Two cell phones seized on September 14, 2018 from Clifton Mosley and currently in the custody of the Department of Health and Human Services, specifically:

i. One Samsung phone model number SM-G550T1; and

ii. One Apple iPhone model number A-1660.

1

## ATTACHMENT A – TARGET DEVICES



## ATTACHMENT B - TARGET DEVICES (ITEMS TO BE SEIZED)

All records contained in the items described in Attachment A which constitute evidence of violations of 21 U.S.C. § 841, as outlined below:

1. All image files, audio files, and video files, in whatever format they are stored, including, but not limited to, those depicting/referencing drugs, and drug paraphernalia. References to money, payments of money, bank accounts, and/or the exchange/use of anything of valuable consideration (e.g., vehicles, precious metals, jewelry).
2. Contact Logs that refer or relate to the user of all numbers on the TARGET DEVICES.
3. Call logs reflecting date and time of received and sent calls
4. Any and all records related to the location of the user(s) of the TARGET DEVICES.
5. For each of the TARGET DEVICE:
    a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
    b. evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
    c. evidence of the lack of such malicious software;
    d. evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence;
    e. evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Devices;
    f. evidence of the times the Devices were used;
    g. passwords, encryption keys, and other access devices that may be necessary to access the Devices;
    h. documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;
    i. contextual information necessary to understand the evidence described in this attachment.
6. With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

    a.    surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

    b.    "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

    c.    "scanning" storage areas to discover and possible recover recently deleted files;

    d.    "scanning" storage areas for deliberately hidden files; or

    e.    performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

7. If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.